740 P.2d 127

**Robert Donald RUSSELL,
Petitioner-Appellant,**

v.

**Joan Theresa RUSSELL,
Respondent-Appellee.**

**No. 9130.**

Court of Appeals of New Mexico.

June 30, 1987.

Stephen D. Turpen, Davis & Turpen, P.A., Albuquerque, for petitioner-appellant.

Charles Rawson, Albuquerque, for respondent-appellee.

## OPINION

MINZNER, Judge.

Husband appeals a post divorce order crediting him with $714.58 against child support and alimony arrearages. Husband contends that the amount of the credit, which represents his community share of a settlement wife received for medical expenses, should be larger. The final decree of divorce entered by the court ordered that any recovery obtained by wife resulting from her claim for toxic shock syndrome would be her separate property, except that portion which was directly attributable to past medical expenses, loss of services to the community and loss of earnings, up to the time of the divorce, which amounts were deemed community property and should be divided equally between husband and wife. On appeal, both parties have assumed that the evidence necessary to support their respective claims is evidence as to the total amount of medical expenses incurred by the community. The appellate issue, however, is not what the total medical expenses were, but what portion of the wife's settlement was directly attributable to medical expenses. We reverse the trial court and remand for further proceedings.

### BACKGROUND.

Petitioner-appellant (husband) and respondent-appellee (wife) were married in 1965 and divorced in 1983. They had one child, who was 16 at the time of the divorce. When the divorce was granted wife had a potential personal injury claim against Proctor and Gamble for toxic shock syndrome. The findings of fact and conclusions of law entered at that time awarded alimony and child support, and included the following paragraph:

14. Respondent has a potential claim or cause of action against the manufacturers and/or distributors of Rely Tampons and/or others by reason of an illness she contracted in 1980 which required her hospitalization and other substantial medical care since that time. In

the event Respondent brings an action or presents a claim against any responsible parties for her said injuries and illness, and in the event Respondent is successful in her claim or action, then that portion of Respondent's claim or cause of action which is directly attributable to past medical expenses, loss of service to the community, and loss of earnings, if any, to the community, up to the time of the dissolution of the parties' marriage, is the community property of the parties and should be divided equally between Petitioner and Respondent. The remaining portion of Respondent's claim or cause of action, including damages for Respondent's physical injury, pain and suffering, is Respondent's separate property.

The final decree adopted the findings of fact and conclusions of law as the court's ruling.

Subsequent to the divorce of the parties, wife filed a motion seeking to have husband held in contempt for failure to pay child support and alimony, and for judgment on the delinquencies. Husband stipulated that he was indebted to wife in the amount of $3,190 for past alimony and child support and in the amount of $2,000, plus interest, for an unauthorized loan obtained on a life insurance policy owned by wife. Husband agreed to make specific payments on these delinquencies. On February 28, 1985, wife filed a motion to enforce stipulation and judgment, asking for arrearages and attorney fees that had been awarded previously. The motion stated that wife's suit against Proctor and Gamble was apparently close to settlement and acknowledged that husband was awarded an interest in that settlement. Wife asked that a receiver be appointed to receive any portion of the settlement due husband, to hold that amount, and to pay future alimony payments from it as they accrue.

After husband was ordered to pay arrearages and make regular alimony payments, a hearing was held with respect to paragraph 14. At the hearing, wife contended that the amount due husband under paragraph 14 was one-half of wife's medical expenses which had not been paid by insurance. She presented a portion of the couple's joint tax return for 1981, showing unreimbursed medical expenses of $1,421.16. Counsel for husband admitted that they had conducted no discovery. Thus, husband did not know the amount of the settlement wife had received or how much of the settlement was attributable to attorney fees, medical expenses, or loss of future earnings. On cross-examination, wife stated that all of her medical expenses in excess of the $1,421.16 had been paid by Blue Cross and Champus. The entitlement to Champus was due to husband's military service, and the Blue Cross premiums were deducted from his Air Force paycheck.

Wife further testified that she had settled with Proctor and Gamble in April 1985, but that under the terms of the settlement the amount could not be disclosed. She did not know how the settlement figure was determined. She did admit that her total medical expenses were in the area of $80,-000 and that the settlement was in excess of that amount.

Following the hearing, husband requested a finding that he was entitled to one-half of $80,000. Findings entered by the trial judge include the following, which are challenged by husband:

14. That no loss of services resulted to the community and no loss of earnings.

15. That the intention of paragraph 14 was to reimburse the community, and in particular the Petitioner, for his one-half of any medical expenses the community inucrred [sic] as a result of the Respondents (sic) illness.

\* \* \* \* \* \*

17. That the only evidence introduced as to medical expenses of the community are shown on Exhibit 1 to the December 16, 1985, hearing and the uncontradicted testimony of the Respondent, which shows the total sum of medical expenses to the community resulting from the illness and during that period to be $1429.15, one-half of which or $714.58, the Petitioner is entitled to recover.

We discuss (1) what portion of wife's settlement, if any, represents community property; and (2) evidence of the amount of medical expenses.

## WHAT PORTION OF THE SETTLEMENT REPRESENTS COMMUNITY PROPERTY?

■ The trial judge found that only an amount equal to medical expenses not paid by insurance was community property. No issue is raised on appeal concerning any right of the community with respect to loss of earnings or loss of services due to wife's illness. Under finding 17, the amount due the community for medical expenses was $1,429.15. It follows from finding 15 that the trial court believed the decree intended to reimburse the community for only those medical expenses the community paid for in cash. That construction of the decree is not supported by the record on appeal.

■ Paragraph 14 states that any portion of the settlement "directly attributable to medical expenses" is community property and should be divided equally. The language in the decree is clear and therefore must be enforced as written. "Where the decree is clear and unambiguous, neither pleadings, findings, nor matters dehors the record may be used to change its meaning or even to construe it. It must stand and be enforced as it speaks." *Parks v. Parks*, 91 N.M. 369, 372, 574 P.2d 588, 591 (1978). In interpreting the decree to refer to non-reimbursable expenses, the trial court is adding limiting language to the decree. The only way an unmodifiable judgment of property settlement may be modified or set aside is by appeal or pursuant to a motion for relief from judgment. *Parks v. Parks.* Neither procedure was followed in this case. *See Russell v. Russell*, 101 N.M. 648, 687 P.2d 83 (1984) (wherein husband appealed only the alimony award, which was affirmed).

■ Where the meaning is obscure or ambiguous, the entire record may be resorted to for the purpose of construing the judgment. *Westbrook v. Lea General Hospital*, 85 N.M. 191, 510 P.2d 515 (Ct.App. 1973). However, even if the language in paragraph 14 were not clear, nothing in the record supports the assumption that "medical expenses" refers to only non-reimbursable expenses.

■ A plain reading of paragraph 14 is also consistent with New Mexico law. This reinforces our conclusion that the decree requires division of any portion of the settlement attributable to medical expenses. While in a personal injury case an award for pain and suffering is separate property, *see Luxton v. Luxton*, 98 N.M. 276, 648 P.2d 315 (1982), a claim for damages to the community for medical expenses and loss of earnings belongs to the community. *Soto v. Vandeventer*, 56 N.M. 483, 245 P.2d 826 (1952); *Rodgers v. Ferguson*, 89 N.M. 688, 556 P.2d 844 (Ct.App.1976).

The Texas Supreme Court explained the rationale for this rule in *Graham v. Franco*, 488 S.W.2d 390 (Texas 1972), where a wife sued for personal injuries sustained in an automobile accident. The court held that "[t]o the extent that the marital partnership has incurred medical or other expenses and has lost wages, both spouses have been damaged by the injury to the spouse; and both spouses have a claim against the wrongdoer. The recovery, therefore, is community in character." *Id.* at 396. *See* W. de Funiak and M. Vaughn, *Principles of Community Property* § 82 (2d ed. 1971).

■ The above authorities characterize recovery for medical expenses as a community asset because it represents reimbursement for debts incurred by the community. Under our statutory characterization, all of the medical expenses incurred in this case were community debts. *See* NMSA 1978, § 40-3-9 (Repl.1986). We conclude that whether or not they were paid by insurance is irrelevant as far as the characterization of the debt is concerned.

■ Further, the insurance which paid the expenses was a community asset because the policy was purchased with community funds. *See* NMSA 1978, §§ 40-3-8 and -12 (Repl.1986); *Stroshine v. Stroshine*, 98 N.M. 742, 652 P.2d 1193 (1982) (property acquired during marriage is pre-

sumptively community). The right to payment of the community debts was acquired by purchasing insurance with community funds. The community has an interest in the proceeds of the policy. *See Douglas v. Douglas*, 101 N.M. 570, 686 P.2d 260 (Ct. App.1984) (holding that the marital community, by reason of payment of premiums on a disability insurance policy, acquired an interest in amounts subsequently paid to the injured spouse because of personal injury and disability). *See also Palama v. Palama*, 323 So.2d 823 (La.App.1975) (fire insurance policy a community asset and proceeds therefrom were due the community).

Since the medical expenses were community debts and the insurance proceeds were community assets, any part of wife's settlement intended to reimburse the community for medical expenses is also community property. The fact that a community debt was paid with community assets is determinative of the issue on appeal. It makes no difference whether the debt was paid with cash or with insurance proceeds; in any event, it was paid by the community. *See Guy v. Guy*, 98 Idaho 205, 560 P.2d 876 (1977) (clearly community labor was the source of the benefit).

■ If the insurance company has been reimbursed by wife from the proceeds of her settlement, then the community portion of the settlement has been used to pay the community debt, and husband is not entitled to any further portion of the settlement. On the record, however, it does not appear that this has happened. If there is a double recovery of medical expenses, both spouses should share in it equally. The community should not be penalized because the parties protected themselves by purchasing insurance.

**EVIDENCE OF THE AMOUNT OF MEDICAL EXPENSES.**

■ The trial court found that the only evidence introduced on medical expenses of the community was the 1981 income tax return and the uncontradicted testimony of wife, which shows the total sum of expenses to the community as $1,429.15. As pointed out above, however, the tax return does not show the total medical expenses of the community, only those not reimbursed by insurance, and wife's uncontradicted testimony was that medical expenses exceeded $80,000. Thus, the finding challenged by appellant is not supported by substantial evidence. *See Fitzsimmons v. Fitzsimmons*, 104 N.M. 420, 722 P.2d 671 (Ct.App.1986) (findings must be supported by the evidence adduced at the hearing). The real issue, however, is not what the community's medical expenses were, but what portion of wife's settlement was directly attributable to medical expenses.

■ While it is clear that the total medical expenses to the community exceeded $1,429.15, it is not so clear what they actually were. Wife testified they were "in the area of $80,000." She did not know how the settlement was arrived at and could not, or would not, testify as to how much of the settlement was attributable to medical expenses. Wife's attorney argued that the settlement from Proctor and Gamble did not specify an amount for medical expenses. Arguments of counsel, however, are not evidence. *State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct.App.1985).

■ Where the record fails to support the findings and conclusions adopted by the trial court and where an additional evidentiary hearing may be required, the cause may be remanded for further hearing and entry of appropriate findings. *See State ex rel. Human Services Dep't v. Coleman*, 104 N.M. 500, 723 P.2d 971 (Ct.App.1986). On the facts of this case, we conclude that a remand is appropriate. On remand, the trial court will have discretion to make rulings that strike a balance between wife's obligation under the settlement agreement and wife's duty to make available sufficient information to allow the trial court to determine the community interest in the settlement proceeds.

■ We note that where a party seeks judgment for arrearages and contempt, the trial court's equitable powers are invoked. *Corliss v. Corliss*, 89 N.M. 235, 549 P.2d 1070 (1976). A party seeking

equity must do equity. *Roybal v. Morris,* 100 N.M. 305, 669 P.2d 1100 (Ct.App.1983).

## CONCLUSION

The case is remanded for a hearing and entry of findings as to the amount of wife's settlement that is directly attributable to medical expenses. The trial court should also determine whether the insurance company has sought recovery from wife for benefits it paid. If the company has been reimbursed by wife for all of its payments, there may be no portion of the settlement left for the community to divide. If it is determined that a substantial amount of the settlement is due husband, it would be appropriate for the trial judge to consider wife's motion for appointment of a receiver, since husband has been less than diligent in meeting his support obligations. Obviously, any amount due husband should first be offset by amounts owed wife for arrearages.

The order is reversed and the case is remanded for further action consistent with this opinion. No costs or attorney fees are awarded.

IT IS SO ORDERED.

DONNELLY, C.J., and APODACA, J., concur.