801 P.2d 93

**Robert Donald RUSSELL, Petitioner–Appellant,**

v.

**Joan Theresa RUSSELL, Respondent–Appellee.**

**No. 10545.**

Court of Appeals of New Mexico.

July 5, 1990.

S. Scott Davis, Davis & Turpen, P.A., Albuquerque, for petitioner-appellant.

Charles W. Rawson, Albuquerque, for respondent-appellee.

## OPINION

CHAVEZ, Judge.

Husband appeals the trial court's findings entered pursuant to a remand by this court in *Russell v. Russell*, 106 N.M. 133, 740 P.2d 127 (Ct.App.1987) (*Russell II*). He raises two issues: (1) whether the trial court erred in finding that none of wife's products liability settlement was directly attributable to medical expenses, and hence community property; and (2) whether the trial court abused its discretion in finding no substantial change in circumstances since the divorce to justify a modification of alimony. We reverse on the first issue and affirm on the second.

## BACKGROUND

The parties were divorced in 1983. *See Russell v. Russell*, 101 N.M. 648, 687 P.2d 83 (1984) (*Russell I*). At that time, wife had a potential personal injury claim against Procter & Gamble. The divorce

decree provided that in the event wife brought an action and was successful, that portion of the claim which is "directly attributable to past medical expenses, loss of service to the community, and loss of earnings, if any, to the community, up to the time of the dissolution of the parties' marriage, is the community property of the parties and should be divided equally." *Id.* 106 N.M. at 135, 740 P.2d at 129.

Wife filed a personal injury suit requesting $1,000,000 in damages in July, 1983, shortly before the statute of limitations was to run. The suit was settled in 1985 for $200,000, releasing Procter & Gamble from all claims whatsoever arising out of the injury. The lump sum settlement did not allocate a specific amount to any type of damages. The parties agree that the actual amount of medical expenses was approximately $80,000. All but $1,476 was covered by insurance. Wife asserts that husband was not entitled to recover any portion of her settlement proceeds, because neither she nor Procter & Gamble intended any part of the settlement to cover wife's medical expenses.

In *Russell II*, we held that since all the medical expenses incurred were community debts, any recovery for those expenses was a community asset. Whether the expenses were paid by insurance is irrelevant. Since the insurance policies were paid with community funds, the insurance proceeds are also community property. *See Roselli v. Rio Communities Serv. Station, Inc.*, 109 N.M. 509, 787 P.2d 428 (1990). Thus, we held that the community has an interest in the proceeds of the policy as well as in any recovery from the tortfeasor. We noted that if there was double recovery for medicals, the community should share in it equally. *Russell II*, 106 N.M. at 136–137, 740 P.2d at 130–131. In *Russell II*, the record did not include a copy of the settlement agreement. We therefore remanded for a determination of the amount of the settlement that was directly attributable to the medical expenses incurred during the marriage. We noted that "[s]ince the medical expenses were community debts and the insurance proceeds were community assets, any part of wife's settlement intended

to reimburse the community for medical expenses is also community property." *Id.* at 137, 740 P.2d at 131.

Pursuant to our remand, a hearing was conducted to determine the amount of the settlement that was directly attributable to medical expenses and to determine whether the insurance companies had sought recovery for the benefits they had paid. At this hearing, the parties, the attorney for Procter & Gamble, a personal injury expert, and a subrogation expert testified. The trial court found that neither insurance company pursued its subrogation rights nor filed an independent suit, and thus they are now time-barred from seeking recovery for the benefits paid. This finding is not challenged. The trial court also found that neither wife nor Procter & Gamble intended any part of the settlement as a reimbursement of past medical expenses; that wife would not have agreed to the settlement amount if she had believed any part of it was to reimburse others for past medicals; and that the settlement did not directly attribute any monies to medical expenses. Husband challenges these three findings.

## MEDICAL EXPENSES

Husband contends the trial court erred in looking at the parties' intention to determine husband's rights to one-half of the community interest in wife's medical expenses. He argues the parties should not be allowed to alter the character of the property simply by declaring a different intention. Therefore, he claims, the trial court erred in finding that no portion of the settlement was directly attributable to past medical expenses. In order to resolve this issue, we must determine whether the trial court was correct in relying on the testimony of the parties to the settlement agreement that neither of them intended any part of the settlement as reimbursement for past medical expenses.

The court's finding reflects its interpretation of our mandate. The court apparently understood the mandate as limiting the husband's recovery to that portion of the settlement specifically allocated to the

community or designated as reimbursement for medical expenses. While that is not an unreasonable interpretation of some of the language in *Russell II*, it was not our intention to deny husband any recovery if the evidence showed wife released Procter & Gamble from all claims arising out of her injuries, including the reimbursement for medical expenses, without taking into account the terms of the divorce decree. Such a result would be inconsistent with the fiduciary duty imposed on each spouse in connection with the power to manage and dispose of the community's personal property. *See Roselli v. Rio Communities Serv. Station, Inc.*, 109 N.M. at 514, 787 P.2d at 433.

The primary objective in construing a contract is to ascertain and give effect to the intent of the parties. *Manuel Lujan Ins., Inc. v. Jordan*, 100 N.M. 573, 673 P.2d 1306 (1983); *Shaeffer v. Kelton*, 95 N.M. 182, 619 P.2d 1226 (1980). A court is bound by the unambiguous language of a settlement agreement. *Burden v. Colonial Homes, Inc.*, 79 N.M. 170, 441 P.2d 210 (1968). Extrinsic evidence is not admissible to determine the intent of the parties unless there is uncertainty and ambiguity in the contract. *United Nuclear Corp. v. Mission Ins. Co.*, 97 N.M. 647, 642 P.2d 1106 (Ct.App.1982). Whether an ambiguity exists is a question of law to be decided by the court. *Id.* A contract is ambiguous if it is reasonably and fairly susceptible of different constructions. *Levenson v. Mobley*, 106 N.M. 399, 744 P.2d 174 (1987).

We find no ambiguity in the settlement agreement executed in this case. Wife released Procter & Gamble of all claims whatsoever arising out of her injuries. The settlement agreement stated that Joan T. Russell releases and discharges Procter & Gamble Company,

> from *all claims* and demands arising out of any and all personal injuries, damages, *expenses*, loss or damage, known or unknown, apparent and not apparent, present and future, alleged to have been sustained as a result of an occurrence or occurrences which happened on or after the 13th day of July, 1980. [Emphasis added.]

The agreement releases Procter & Gamble of all damages and expenses incurred as a result of wife's injuries. This release clearly includes past medical expenses and we find no ambiguity regarding the parties' intention to settle all possible claims. Yet the testimony of the parties to the settlement agreement was to the contrary. Since the written provisions of the release are not ambiguous, the trial court erred in relying upon testimony that contradicted the terms of the settlement agreement. *See Acquisto v. Joe R. Hahn Enters., Inc.*, 95 N.M. 193, 619 P.2d 1237 (1980) (where lease was plain and unambiguous, parole evidence as to intent of parties not admissible to vary terms of the agreement). Because we hold that the testimony of wife and the attorney for Procter & Gamble was not admissible to vary the settlement agreement, there was no evidence to support a finding that none of the settlement proceeds was community property.

■ Wife argues that other findings, unchallenged by husband, were sufficient to support the conclusion that no portion of the product liability settlement was attributable to medical expenses. These findings consist of the loss of the insurance companies' claims and husband's failure to intervene in the product liability suit. We do not see how these findings would support the trial court's conclusion. To so hold would mean that failure to intervene by a real party in interest is conclusive evidence that the party had no viable claim in the action.

Wife also argues that there was no claim for past medical expenses at the time of the execution of the settlement agreement, and therefore the settlement could not include medicals because such a claim did not exist. Wife again directs us to the trial court's finding that the insurance companies were barred from asserting their claim. As we stated in *Russell II*, however, the community has an interest in the proceeds of the policy as well as in any recovery from the tortfeasor. We do not believe that the viability of the insurance companies' claim is dispositive of the issue

as to whether the settlement included a payment for medicals. Husband still had a claim to one-half of the community interest in the settlement. His claim stems from the divorce decree and was viable at the time of the settlement. NMSA 1978, § 37–1–2 (amended by 1983 N.M.Laws, 259, § 1, now codified as NMSA 1978, § 37–1–2 (Cum.Supp.1989)).

▮ Since the medical expenses incurred during the marriage were included in the settlement agreement, we conclude that some portion of the settlement proceeds is "directly attributable" to medical expenses within the meaning of the divorce decree as interpreted in *Russell II.* There being no evidence to support an award of a lesser amount, we also conclude that on these facts the sum "directly attributable" to medical expenses is approximately $80,-000. Equitable principles require that these expenses be reduced by a proportionate share of the attorney fees and costs incurred by wife in her suit against Procter & Gamble. *Cf. Transport Indem. Co. v. Garcia,* 89 N.M. 342, 552 P.2d 473 (Ct.App. 1976) (where worker bore the burden of expense and risk of litigation of third-party action, insurance carrier seeking reimbursement from worker should be charged with its proportionate share of costs). Husband is entitled to one-half of the amount of wife's medical expenses paid by the community, less the reasonable amount of wife's attorney's fees and costs in obtaining the settlement. Any amount due husband may be offset by amounts due wife for arrearages. Also, the trial judge may consider fashioning an equitable safeguard applicable to husband's portion of the recovery in order to insure that husband complies with his support obligations in the future. *Russell II.*

## MODIFICATION OF ALIMONY

▮ As his second issue, husband contends that the trial court abused its discretion in finding no substantial change in circumstances since the divorce to justify a modification of alimony. Husband points to wife's receipt of the settlement proceeds and the increase in her income from $400

per month at the time of divorce, to $600 per month. He also points to some of his requested findings of fact and claims error in the trial court's refusal to adopt them.

An award or denial of alimony rests within the trial court's sound discretion, and its determination will be altered only upon a showing of an abuse of discretion in fixing an amount contrary to all reason. *Russell I.* Changes in circumstances may warrant a reduction or a termination of an alimony award. *See Lovato v. Lovato,* 98 N.M. 11, 644 P.2d 525 (1982); *McClure v. McClure,* 90 N.M. 23, 559 P.2d 400 (1976). Some of the factors considered in determining whether to award or modify alimony are the needs of the dependent spouse, his or her age, health, means of support, the earning capacity of each spouse, the duration of the marriage, and the amount of property owned by each. *Russell I; Michelson v. Michelson,* 86 N.M. 107, 520 P.2d 263 (1974).

The court found that wife is sixty years old, unable to obtain health insurance, has severe and permanent injuries, that she alone is contributing to the parties' son's college education, and that she has approximately $69,000 remaining of the settlement amount. These findings are supported by wife's testimony and are uncontested on appeal. The trial court also found that at the time of the divorce, husband was receiving $1,325 a month in military retirement benefits and earning $4.50 an hour; now, husband receives $1,562 a month in military benefits and earns $5.75 an hour. We find no abuse of discretion in the trial court's determination that there was no substantial change in circumstances to justify a modification of alimony. (For a review of the alimony award at the time of divorce, *see Russell I.*)

▮ We also find no error in the trial court's refusal to adopt husband's requested findings. The findings requested by husband were findings of evidentiary facts and not necessary to the trial court's decision. A trial court is only required to make findings of such ultimate facts as are necessary to determine the issues. *Sanchez v. Sanchez,* 84 N.M. 498, 505 P.2d 443 (1973);

**28**

*Rutledge v. Johnson,* 81 N.M. 217, 465 P.2d 274 (1970); SCRA 1986, 1–052(B)(1)(b). At most, husband points to conflicting evidence. We will not substitute our judgment for that of the trial court's as to the effect of conflicting evidence. *Boone v. Boone,* 90 N.M. 466, 565 P.2d 337 (1977).

 Husband also argues that the trial court erred in its consideration of the increase in his military retirement pay. However, he cites no authority to support this claim. The parties' divorce was processed during the brief period of time when military retirement benefits were the sole and separate property of the military spouse. While the division and nature of the community assets are related to fashioning an alimony award, *Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981), other important factors are also considered, particularly the needs of the recipient spouse. *Id.; Weaver v. Weaver,* 100 N.M. 165, 667 P.2d 970 (1983). Therefore, the characterization of military retirement benefits as separate property does not preclude the court from considering them when fashioning a just and proper alimony award. *See Michaluk v. Burke,* 105 N.M. 670, 735 P.2d 1176 (Ct.App.1987).

CONCLUSION

For the foregoing reasons, the trial court is reversed in part and affirmed in part. Each party is to pay his or her own attorney's fees and costs incident to this appeal.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.